UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

TARSHA RAY, Individually and as Personal Representative
of Estate of MARK M. HARRY,

      Plaintiff,

v.

FLORIDA DEPARTMENT OF CORRECTIONS
d/b/a LOXAHATCHEE ROAD PRISON,
FLORIDA DEPARTMENT OF CORRECTIONS
d/b/a MARTIN CORRECTIONAL INSTITUTION,
CENTURION OF FLORIDA LLC, and DOEs 1-20,

      Defendants.

_____ /

## **COMPLAINT**

The Plaintiff, TARSHA RAY, Individually and as Personal Representative of Estate of MARK M. HARRY, by and through her undersigned counsel, hereby sues the Defendants, FLORIDA DEPARTMENT OF CORRECTIONS d/b/a LOXAHATCHEE ROAD PRISON, FLORIDA DEPARTMENT OF CORRECTIONS d/b/a MARTIN CORRECTIONAL INSTITUTION, CENTURION OF FLORIDA LLC, and DOEs 1-20, and alleges:

### **PARTIES**

1.   Decedent, MARK M. HARRY ("HARRY"), was an inmate who, at all relevant times, was incarcerated by the State of Florida and sentenced to the FLORIDA DEPARTMENT OF CORRECTIONS ("FDOC") at LOXAHATCHEE ROAD PRISON. At the time of his unfortunate death, he was set to be released on or about September 23, 2023. HARRY was 45 years old at the time of his death and would have been 46 years old at the time of his release.

2.   At the time of his death on April 9, 2023, HARRY left the following beneficiaries in a wrongful death action upon whose behalf a claim is made herein:

    a.   Mark M. Harry, Jr.

    b.   Isaiah M. Harry

    c.   Noah E. Harry

    d.   M. M. H., a minor

    e.   T. M. H , a minor

    f.   E. L. H., a minor

    g.   T. M. H , a minor

    h.   T. D. H , a minor

    i.   T. M. H., a minor

3.   Defendant FLORIDA DEPARTMENT OF CORRECTIONS is a government agency of the State of Florida which operates prisons and incarcerates inmates throughout the State of Florida, including in Palm Beach County, Florida.

4.   Plaintiff TARSHA RAY ("RAY") is the duly appointed personal representative of the deceased inmate HARRY, is *sui juris,* and is the mother of seven (7) of Decedent HARRY's nine (9) children.

5.   Defendant CENTURION OF FLORIDA, LLC ("CENTURION") is a privately owned Florida limited liability company that is authorized to, and does, conduct business in Florida, including in Palm Beach County and Martin County.

6.   Defendant   FLORIDA   DEPARTMENT   OF   CORRECTIONS   d/b/a LOXAHATCHEE ROAD PRISON ("Loxahatchee Road Prison") is a state correctional institution

located in Palm Beach County, Florida, located at or near 230 Sunshine Road, West Palm Beach, Florida, and operating under the authority of the Florida Department of Corrections.

7.    Defendant FLORIDA DEPARTMENT OF CORRECTIONS d/b/a MARTIN CORRECTIONAL INSTITUTION ("Martin County Correctional") is another state correctional institution in Florida equipped with an on-site medical treatment facility. It is responsible for providing medical care to inmates transferred from Loxahatchee Road Prison when the need for medical treatment arises.

8.    Defendants JOHN DOEs 1-20 are employees of Loxahatchee Road Prison and/or CENTURION who, at all relevant times, were responsible for monitoring the prison and overall well-being of inmates and evaluating requests for medical treatment. Among their duties, they were in relevant part responsible for responding to Decedent's requests for medical care and for determining whether transportation to a medical facility was necessary.

9.    Defendant, RN DOE MOISE, is licensed by the State of Florida as a registered nurse and was, at all relevant times, believed to be an agent or employee of CENTURION and was assigned to provide medical services at various facilities operated by FDOC, including Martin Correctional Institution.

10.    Defendant CNA DOE MCLAUGHLIN is licensed by the State of Florida as a certified nursing assistant and was, at all relevant times, believed to be an agent or employee of CENTURION.

11.    Defendant John Doe Doctor, MD ("DOE DOCTOR"), is licensed by the State of Florida as a medical doctor and was, at all relevant times, believed to be an agent or employee of CENTURION and was assigned to provide medical services at various facilities operated by FDOC, including Martin Correctional Institution.

12.     Upon information and belief, Defendant CENTURION has employees who work in a department or division called "Utilization Management." The role of these individuals is to review, approve, deny, or alter medical treatment plans for chronic care and emergent care patients like Plaintiff. Plaintiff also reasonably believes that individuals working within the Utilization Management department are responsible for arranging outside specialty consultations and treatment appointments and that these individuals approve or deny treatment plans and appointments on myriad factors that include cost or complexity. Plaintiff is currently unaware of the names of these individuals and the entirety of their role in altering or stopping treatment plans ordered by CENTURION's doctors. The true names of these defendants will be substituted upon discovery of same.

13.     At all material times, Defendants DOE DOCTOR, DOE CNA MCLAUGHLIN, DOE MOISE, and Doe Defendants were acting within the scope of their employment and therefore FDOC and CENTURION are vicariously liable under the principle of *respondeat superior* for the acts and omissions of its employees including, DOE MCLAUGHLIN, DOE MOISE, DOE DOCTOR, and the Doe Defendants.

14.     CENTURION is vicariously liable under the principle of *respondeat superior*, principal/agency and/or non-delegable duty for the actions and/or inactions of their employees, including those employees named as defendants in this action, as to any claims that are asserted by Plaintiff.

15.     For purposes of Plaintiff's claims that arise under Federal law, including without limitation the United States Constitution and 42 U.S.C. §1983 *et. seq.,* and as may be relevant to Plaintiff's state law claims, at all relevant times described herein, all Defendants were acting under the color of state law.

## JURISDICTION AND VENUE

16.   This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331 because this action arises under federal law, specifically 42 U.S.C. § 1983.

17.   This is an action for damages in excess of $75,000.00.

18.   This is an action brought pursuant to the Florida Wrongful Death Act, F.S. 768.16 for the wrongful death of HARRY.

19.   This action is brought by RAY, in her capacity as Personal Representative of the Estate of HARRY and on behalf of HARRY's survivors.

20.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

21.   The amount in controversy exceeds the minimum jurisdictional limits of this Court.

## FACTUAL ALLEGATIONS

22.    The State of Florida owns and operates prisons within Florida.

23.    The State of Florida has non-delegable duties to provide healthcare that complies with the Constitution of the United States, the Florida Constitution, and the applicable standard of care for inmate medical needs.

24.    The State of Florida and the Florida Department of Corrections (FDOC) have historically contracted with outside medical providers to deliver care to inmates housed in prisons operated by the FDOC.

25.    Upon information and belief, the State of Florida and the FDOC pay their contracted medical providers a specified rate that is essentially computed on a "per inmate, per day" basis. Thus, any portion of the per diem that is not spent on medical care or overhead becomes profit for the private medical providers.

26.    On or about January 2016, the State of Florida and the FDOC awarded CENTURION a contract to be the exclusive provider of medical care at prisons owned and operated by the State of Florida, including LOXAHATCHEE ROAD PRISON.

27.    The State of Florida and the FDOC simultaneously announced that they had awarded the exclusive contract for providing medical care to Florida's inmates to CENTURION, with CENTURION's contract set to begin on January 29, 2016.

28.    Decedent MARK M. HARRY, a father of nine children was serving a four-year sentence and was approximately 4.5 months away from release at the time of his death.

29.    Approximately three weeks before his death, Decedent was transferred to Loxahatchee Road Prison, which does not have an on-site medical infirmary. Instead, inmates are required to complete Health Needs Request (HNR) forms to request medical care, with the determination of whether medical treatment is necessary made by employees at the prison, including, among others, DOES 1-20. If it is determined that an inmate should receive medical care, they are transported to the nearest correctional facility with an infirmary, which is Martin Correctional Institution, or, if an inmate's medical condition is deemed an emergency, to either Wellington Regional Medical Center or Palms West Hospital.

30.    At all relevant times, upon information and belief, Loxahatchee Road Prison had instituted a routine practice to minimize medical complaints from inmates to reduce costs associated with transporting inmates to outside medical facilities such as Martin Correctional.

31.    Under this system, DOE Guards and CENTURION employees were given significant discretion to ignore, delay, or deny requests for medical treatment, regardless of the severity of an inmate's symptoms. This practice resulted in inadequate medical care,

demonstrating deliberate indifference to the serious medical needs of inmates, including HARRY, as outlined infra.

32.     Further, at all relevant times, upon information and belief, Loxahatchee Road Prison guards were incentivized, either formally or informally, to dismiss complaints of medical issues as minor and avoid transferring inmates to Martin Correctional or Wellington Regional Medical Center for necessary treatment. This policy or practice was motivated by a desire to reduce transportation costs and avoid the administrative burden associated with medical transfers.

33.     The policies and customs for medical care at Loxahatchee Road Prison fostered a culture of deliberate indifference to the serious medical needs of inmates. As a result, inmates experiencing significant health issues were often left untreated or given inadequate care.

34.     In the approximately three weeks leading up to his death, HARRY routinely spoke to RAY by telephone from Loxahatchee Road Prison, reporting on a near-daily basis that he was experiencing symptoms consistent with an aortic dissection, including severe chest pain and swollen feet, which are well-recognized signs of a life-threatening condition.

35.     Consistent with his telephone conversations with RAY, from March 22, 2023, to the time of his death on April 9, 2023, HARRY complained of chest pain, stomach pain, back pain, numbness and swelling in his feet, and shortness of breath daily to DOE GUARDS, requesting medical care and describing his symptoms as severe and urgent.

36.     On March 22 and 23, HARRY was dismissed by DOES 1-20 and not permitted to complete an HNR form.

37.     On March 24, 2023, HARRY was permitted to complete an HNR form and was transported to Martin Correctional Institution, where he saw DOE DOCTOR and CNA MCLAUGHLIN. He complained of chest pain, stomach pain, and back pain, as well as a swollen

foot that felt numb. Upon information and belief, DOE DOCTOR, along with CNA MCLAUGHLIN, told HARRY that he had acid reflux, deliberately ignoring his other symptoms and prescribing him ibuprofen.

38.     From March 25 to April 1, 2023, HARRY complained daily to DOE guards, requesting opportunities to complete HNR forms but was denied the ability to do so.

39.     On April 2, HARRY was finally permitted to submit another HNR form and was transported to the infirmary at Martin Correctional Institution, where he was seen by RN MOISE. Despite complaining of severe chest pain, shortness of breath, and numbness and swelling in his legs and feet, RN MOISE listed his complaints only as chest pain, rated at a 2/10. MOISE disregarded HARRY's urgent and serious medical needs, noting that no treatment was required and dismissing HARRY back to his cell.

40.     The low back pain rating was communicated to Decedent's medical providers, who deliberately ignored the possibility of a serious and potentially fatal condition to avoid the expense of transporting Decedent to a local medical facility. No further examination, diagnostic testing, or referral to an appropriate medical facility was provided to assess the underlying cause of his symptoms.

41.     From April 3 to April 9, 2023, HARRY called RAY each day and informed her that he had repeatedly sought medical attention from the guards at Loxahatchee Road Prison but was dismissed.

42.     On those days, DOEs 1-20 continued to refuse to acknowledge his serious symptoms, leaving him to endure severe pain and medical distress while exhibiting textbook symptoms of an aortic dissection without proper care and intervention.

43.     The night before his death, on April 8, HARRY called RAY and his children, informing RAY that DOES 1-20 "were leaving [him] here to die" and that he did not believe he would survive much longer.

44.     On April 9, 2023, HARRY was found unconscious in his cell after going into cardiac arrest. EMS performed CPR and transported HARRY from Loxahatchee Road Prison to Wellington Regional Medical Center.

45.     Upon his arrival, despite multiple rounds of epinephrine, amiodarone, and defibrillation by paramedics, HARRY could not be resuscitated and was declared dead.

46.     HARRY's death was the result of Loxahatchee Road Prison's failure to provide timely medical care and systemic indifference to inmate health and safety.

47.     As is customary, Loxahatchee Road Prison's system required inmates to complete Health Needs Request forms to request medical care. In HARRY's repeated attempts to seek care through this process, DOE guards failed to log and/or permit his requests, disregarded the severity of his condition, deemed his complaints unworthy of medical transport, and/or all of the above.

48.     Upon information and belief, Loxahatchee Road Prison and its guards operated with deliberate indifference to Decedent's serious medical needs, knowingly disregarding his complaints and failing to provide necessary and life-saving medical care.

49.     The conduct of Loxahatchee Road Prison and its guards exemplifies a callous and reckless disregard for the health and well-being of the Decedent, with the policies and practices in place creating an environment conducive to neglecting inmate medical needs and minimizing transportation to outside medical facilities.

50.     Upon information and belief, at all relevant times, Loxahatchee Road Prison, Martin Correctional Institution, and FDOC collectively had a routine system in place that minimized

medical complaints from inmates to reduce costs associated with transporting inmates to outside medical facilities. Under this system, guards were given significant discretion to ignore, delay, or deny requests for medical treatment, regardless of the severity of an inmate's symptoms. This practice resulted in inadequate medical care, demonstrating deliberate indifference to the serious medical needs of inmates, including Decedent.

51.     Loxahatchee Road Prison guards were incentivized, either formally or informally, to dismiss complaints of medical issues as minor and avoid transferring inmates to Martin County Correctional, Palms West Hospital, or Wellington Regional Medical Center for necessary treatment. This policy or practice was motivated by a desire to reduce transportation costs and avoid the administrative burden associated with medical transfers.

52.     The policies and customs of Loxahatchee Road Prison and Martin Correctional Institution fostered a culture of deliberate indifference to the serious medical needs of inmates. As a result, inmates experiencing significant health issues were often left untreated or given inadequate care.

53.     Upon information and belief, Loxahatchee Road Prison, Martin Correctional Institution, and DOE guards operated with deliberate indifference to HARRY's serious medical needs, knowingly disregarding his complaints and failing to provide necessary and life-saving medical care.

54.     The conduct of Loxahatchee Road Prison and its guards exemplifies a callous and reckless disregard for the health and well-being of the Decedent, with the policies and practices in place creating an environment conducive to neglecting inmate medical needs and unduly limiting transportation to outside medical facilities.

**CLAIMS FOR RELIEF**

**COUNT ONE: VIOLATION OF THE EIGHTH AMENDMENT – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS (42 U.S.C. § 1983) (Against Defendants FLORIDA DEPARTMENT OF CORRECTIONS d/b/a Loxahatchee Road Prison, FLORIDA DEPARTMENT OF CORRECTIONS d/b/a Martin Correctional Institution, and JOHN DOE GUARDS 1-20)**

55.  Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

56. The Eighth Amendment to the United States Constitution, which applies to Defendants and Doe Guards pursuant to the Due Process Clause of the Fourteenth Amendment, forbids those who act under color of law from being deliberately indifferent to the serious medical needs of individuals in their custody and control.

57. At all relevant times, Decedent was in the custody and care of Defendants Loxahatchee Road Prison, Martin Correctional Institution, and DOE DOCTOR, CNA DOE MCLAUGHLIN, RN DOE MOISE, and DOE Guards 1-20, all of whom were acting under the color of state law.

58. At all times, Decedent was in the custody and control of Defendants, including Doe Doctor, CNA DOE MCLAUGHLIN, RN DOE MOISE, and Doe Defendants, and was entirely dependent upon Defendants for his medical care.

59. HARRY was not receiving proper medical attention despite his urgent complaints to Doe Guards and Doe Medical Providers of symptoms consistent with an aortic dissection. Their responses were to deny, delay, or otherwise interfere with HARRY's ability to receive necessary medical treatment for his serious medical condition.

60. Each Defendant knew that HARRY's medical conditions were serious and were being ignored, and that treatment was being delayed. Specifically, Defendant CENTURION and the Doe

Defendants refused to conduct a proper workup of his serious medical condition and failed to act to prevent serious medical harm.

61. HARRY had serious medical needs that were known or should have been known to Defendants, including symptoms consistent with an aortic dissection, such as severe chest pain and swollen feet.

62. Defendants FDOC and Doe Guards 1-20 acted with deliberate indifference by failing to take reasonable measures to address Decedent's serious medical needs. This indifference aligned with the facility's policy and practice of minimizing inmate complaints and reducing costs associated with medical transportation.

63. Despite Decedent's repeated complaints and requests for medical care, Defendants FDOC and Doe Guards 1-20 failed to respond appropriately, and deliberately and maliciously disregarded the severity of his condition, causing unnecessary pain, suffering, and ultimately, death.

64. FDOC's conduct in this regard was objectively unreasonable and was undertaken with willful, reckless, and malicious indifference to the constitutional rights and liberty interests of Decedent, with no regard for the likelihood of causing extreme, unnecessary pain and death to HARRY. As a result, HARRY endured extreme, unnecessary pain and ultimately died without any legitimate penological purpose.

65. The wrongful conduct of FDOC constitutes a violation of 42 U.S.C. § 1983, in that, with deliberate and callous indifference, they deprived HARRY of his Eighth and/or Fourteenth Amendment rights under the United States Constitution by denying him desperately needed and required medical treatment while he was under their care.

66. Defendants' actions and inactions violated Decedent's rights under the Eighth Amendment to the United States Constitution, which protects against cruel and unusual punishment by ensuring that inmates receive adequate medical care.

67. As a direct and proximate result of Defendants' deliberate indifference, HARRY suffered severe pain, distress, and an untimely death. RAY has incurred medical and funeral expenses for the father of her children. HARRY's survivors have lost the care, affection, and support of their father, and have experienced mental pain and suffering as a result of their father's death. These damages are ongoing and continuing in nature and will dramatically impact them for support and services the remainder of their lives.

68. Pursuant to 42 U.S.C. § 1988 and other applicable law, Plaintiff is entitled to an award of incurred attorneys' fees and costs.

WHEREFORE, Plaintiff seeks a judgment in her favor and against Defendants FLORIDA DEPARTMENT OF CORRECTIONS d/b/a Loxahatchee Road Prison, FLORIDA DEPARTMENT OF CORRECTIONS d/b/a Martin Correctional Institution, and JOHN DOE GUARDS 1-20 for compensatory, general, and special damages against each and every Defendant, for pre- and post-judgment interest to the extent provided by law, for Plaintiff's incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 1997, and as otherwise authorized by any law or statute, and for any other relief this Court deems just and proper.

**COUNT TWO: VIOLATION OF THE EIGHTH AMENDMENT – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS (42 U.S.C. § 1983)**
**(Against Defendants CENTURION, RN DOE MOISE, CNA DOE MCLAUGHLIN, and JOHN DOE DOCTOR, MD)**

69.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

70.     The Eighth Amendment to the United States Constitution, which applies to Defendants CENTURION, RN DOE MOISE, CNA DOE MCLAUGHLIN, and JOHN DOE DOCTOR, MD, pursuant to the Due Process Clause of the Fourteenth Amendment, forbids those who act under color of law from being deliberately indifferent to the serious medical needs of individuals in their custody and control.

71.     At all relevant times, HARRY was in the custody and care of Defendants CENTURION, DOE DOCTOR, CNA DOE MCLAUGHLIN, and RN DOE MOISE, who were acting under the color of state law.

72.     At all times, HARRY was in the custody and control of CENTURION, DOE DOCTOR, CNA DOE MCLAUGHLIN, and RN DOE MOISE, and HARRY was entirely dependent upon Defendants for his medical care.

73.     HARRY was not receiving proper medical attention despite his urgent complaints to Doe Guards and Doe Medical Providers, which were consistent with an aortic dissection. Their responses were to deny, delay, or otherwise interfere with HARRY's ability to receive necessary medical treatment for his serious medical condition.

74.     CENTURION, DOE DOCTOR, CNA DOE MCLAUGHLIN, and RN DOE MOISE knew that HARRY's medical conditions were serious and were being ignored, and that treatment was being delayed. Defendants CENTURION, DOE DOCTOR, CNA DOE MCLAUGHLIN, and RN DOE MOISE willfully and maliciously refused to conduct a proper workup of his serious medical condition and failed to act to prevent serious medical harm.

75.     HARRY had serious medical needs that were known or should have been known to Defendants, including symptoms consistent with an aortic dissection, such as severe chest pain and swollen feet.

76.     Defendants CENTURION, DOE DOCTOR, CNA DOE MCLAUGHLIN, and RN DOE MOISE acted with deliberate indifference by failing to take reasonable measures to address Decedent's serious medical needs. This indifference was consistent with the facility's policy and practice of minimizing inmate complaints and reducing costs associated with medical transportation.

77.     Despite Decedent's repeated complaints and requests for medical care, Defendants CENTURION, DOE DOCTOR, CNA DOE MCLAUGHLIN, and RN DOE MOISE failed to respond appropriately, and deliberately and maliciously disregarded the severity of his condition, causing unnecessary pain, suffering, and ultimately, death.

78.     CENTURION, DOE DOCTOR, CNA DOE MCLAUGHLIN, and RN DOE MOISE's collective conduct in this regard was objectively unreasonable and was undertaken with willful, reckless, and malicious indifference to the constitutional rights and liberty interests of HARRY, with no regard for the likelihood of causing extreme, unnecessary pain and death. As a result, HARRY endured extreme, unnecessary pain and ultimately died without any legitimate penological purpose.

79.     The wrongful conduct of CENTURION, DOE DOCTOR, CNA DOE MCLAUGHLIN, and RN DOE MOISE constitutes a violation of 42 U.S.C. § 1983, in that, with deliberate and callous indifference, they deprived HARRY of his Eighth and/or Fourteenth Amendment rights under the United States Constitution by denying him desperately needed and required medical treatment while he was under their care.

80.     CENTURION, DOE DOCTOR, CNA DOE MCLAUGHLIN, and RN DOE MOISE's actions and inactions violated Decedent's rights under the Eighth Amendment to the United States Constitution, which protects against cruel and unusual punishment by ensuring that inmates receive adequate medical care.

81.     As a direct and proximate result of CENTURION, DOE DOCTOR, CNA DOE MCLAUGHLIN, and RN DOE MOISE's collective deliberate indifference, HARRY suffered severe pain, distress, and an untimely death. RAY has incurred medical and funeral expenses for the father of her children. HARRY's survivors have lost the care, affection, and support of their father, and have experienced mental pain and suffering as a result of their father's death. These damages are ongoing and continuing in nature and will dramatically impact them for the remainder of their lives.

82.     Pursuant to 42 U.S.C. § 1988 and other applicable law, Plaintiff is entitled to an award of incurred attorneys' fees and costs.

WHEREFORE, Plaintiff seeks a judgment in her favor and against Defendants CENTURION, DOE DOCTOR, CNA DOE MCLAUGHLIN, and RN DOE MOISE for compensatory, general, and special damages against each and every Defendant, for pre- and post-judgment interest to the extent provided by law, for Plaintiff's incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 1997, and as otherwise authorized by any law or statute, and for any other relief this Court deems just and proper.

### COUNT THREE: VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)
### (Against Defendant CENTURION)

83.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

84.     Pursuant to the Eighth and Fourteenth Amendments to the United States Constitution, CENTURION and the State of Florida owe inmates, including HARRY a duty of competent medical care that comports with the Constitution of the United States and the Florida State Constitution.

85.      As set forth *supra*, HARRY required emergency medical care while he was housed at Loxahatchee Road Prison.

86.      All of HARRY's medical care and attention was provided by CENTURION or their outside medical providers. CENTURION are responsible for HARRY's continued care while he was incarcerated – including, providing proper workups and diagnoses for HARRY's gradual onset of aortic dissection.

87.     Defendant CENTURION promulgated and endorsed written and unwritten policies, customs, and procedures that resulted in a violation of HARRY's constitutional rights.

88.      Defendant CENTURION had a policy and practice of providing inmates with inadequate medical care in order to minimize their expenses and maximize their profits and are deliberately indifferent to the fact that their systematic failure to provide adequate medical care to inmates results in significant injury and a substantial risk of serious harm to said inmates.

89.     Defendant CENTURION's policy and practice of failing to provide medical care in Florida's prisons results in inmates experiencing prolonged unnecessary pain and suffering, preventable injury, illnesses and death.

90.     The deliberate indifference to Decedent's serious medical needs, the failure to provide necessary medical treatment, and the failure to adequately respond to Decedent's repeated requests for care constituted a violation of his Fourteenth Amendment rights to due process.

91.     CENTURION's policy and practice of failing to provide adequate medical care directly and proximately caused HARRY's pain, suffering and death.

92.     CENTURION's policy and practice of understaffing their prison healthcare facilities with insufficient medical staff and healthcare providers caused inappropriate, unreasonable, unsafe and unconstitutional delays in diagnosing and treating inmates in Loxahatchee Road Prison, Martin Correctional Institution, and elsewhere.

93.   CENTURION's policy and practice of delaying the scheduling or ignoring the requests for outside consults, surgeries, medical care, follow-up treatment, caused inappropriate, unreasonable, unsafe and unconstitutional delays in diagnosing and treating inmates in Loxahatchee Road Prison and Martin Correctional Institution.

94.     By their policies and practices described herein, CENTURION subjects inmates like HARRY to pain, suffering, substantial risk of death, serious harm or permanent injury from inadequate medical care.

95.     These policies and practices have been and continue to be implemented by CENTURION via their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities and are the proximate cause of the deprivation of HARRY's rights secured by the United States Constitution under the Eighth and Fourteenth Amendments.

96.     In violating HARRY's constitutional right to competent, timely medical care while in custody as described above, CENTURION was deliberately indifferent to HARRY's serious medical conditions and need for treatment.

97.     CENTURION's deliberate indifference disregarded clearly-established law articulating HARRY's right to timely and competent medical care while in custody.

98.     No reasonable prison healthcare provider in CENTURION's position could have believed or concluded that HARRY was not entitled to timely, competent medical care under the Eighth and/or Fourteenth Amendment.

99.     Timely, competent medical care while HARRY was in custody and under the care of CENTURION would have prevented Plaintiff's serious permanent injuries and death.

100.    HARRY's injuries were a foreseeable consequence of the deliberate indifference by CENTURION and its violation of Plaintiff's constitutional rights, and caused Plaintiff's pain, suffering, and death as described herein.

101.    As a direct and proximate result of Defendants' deliberate indifference, HARRY suffered severe pain, distress, and an untimely death. RAY has incurred medical and funeral expenses for the father of her children. HARRY's survivors have lost the care, affection, and support of their father, and have experienced mental pain and suffering as a result of their father's death. These damages are ongoing and continuing in nature and will dramatically impact them for the remainder of their lives.

WHEREFORE, Plaintiff seeks a judgment in its favor and against Defendant CENTURION for compensatory, general and special damages against each and every Defendant, for pre- and post-judgment interest to the extent provided by law, for Plaintiff's incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 USC 1988, 42 USC 1997 and as otherwise authorized by any law or statute, and for any other relief this Court deems just and proper.

## COUNT FOUR: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT FDOC

102.    Plaintiff re-alleges and incorporates by reference each of the previous allegations as if fully set forth herein.

103.     As alleged herein, HARRY was in the care and custody of the FDOC and was entirely reliant on the care provided by CENTURION, and their medical providers RN MOISE, Doe Doctor, Doe CNA, and Doe Defendants.

104.     As alleged herein, FDOC acted intentionally and recklessly in their care of HARRY.

105.     The actions described herein were extreme and outrageous and the resulting damages to HARRY were also extreme and outrageous.

106.     The actions caused HARRY to endure severe emotional distress.

WHEREFORE, Plaintiff seeks a judgment in its favor and against Defendant FDOC for compensatory, general and special damages against each and every Defendant, for pre- and post-judgment interest to the extent provided by law, for Plaintiff's incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 USC 1988, 42 USC 1997 and as otherwise authorized by any law or statute, and for any other relief this Court deems just and proper.

**COUNT FIVE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT CENTURION**

107.     Plaintiff re-alleges and incorporates by reference each of the previous allegations as if fully set forth herein.

108.     As alleged herein, HARRY was in the care and custody of the FDOC and was entirely reliant on the care provided by CENTURION, and their medical providers RN MOISE, Doe Doctor, Doe CNA, and Doe Defendants.

109.     As alleged herein, CENTURION acted intentionally and recklessly in its care of HARRY.

110.     The actions described herein were extreme and outrageous and the resulting damages to HARRY were also extreme and outrageous.

111.    The actions caused HARRY to endure severe emotional distress.

WHEREFORE, Plaintiff seeks a judgment in its favor and against Defendant FDOC for compensatory, general and special damages against each and every Defendant, for pre- and post-judgment interest to the extent provided by law, for Plaintiff's incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 USC 1988, 42 USC 1997 and as otherwise authorized by any law or statute, and for any other relief this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial in this matter as to all claims and against all Defendants.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the was filed electronically through the CM/ECF System, this 4th day of December 2024.

SCHULER, WEISSER, ZOELLER,
OVERBECK & BAXTER, P.A.
Attorneys for Plaintiff TARSHA RAY
Barristers Building, Fourth Floor
1615 Forum Place
West Palm Beach, FL  33401
(561) 689-8180


By:    /s/ Shane A. Chernoff
        JASON D. WEISSER
        Florida Bar No:  101435
        SHANE A. CHERNOFF
        Florida Bar No:  127295
        E-mail 1: jweisser@shw-law.com
        E-mail 2: schernoff@shw-law.com
        E-mail 3: michele@shw-law.com
        E-mail 4: jroche@shw-law.com